Thank you. May it please the Court, Zachary Nightingale with Co-Counsel Avantika Shastri for the Sharma family who is in court today. I would like to reserve two minutes for the reply. Okay. The Board addressed several different reasons to deny this motion, and I think I would turn first to the first issue raised by the government to only address a couple of the reasons in their brief. The due diligence of the female respondent, Joytika Sharma. We now have the three-step analysis of this court in the Avakyan case, which I think it's clear that she does show due diligence when looked at in that framework. She was never asked when she and her husband went to the asylum office, the asylum officer never asked her whether she had a fear. The immigration judge never asked her, in addition to her own attorneys never asking her. But she never knew that there was any need or reason for her to file a separate application since she knew she was included in her husband's case, and that was being handled by a series of counsel all along. She also reasonably relied that she always had counsel, they were very good about always having counsel all along, and she reasonably relied that the attorneys knew what they were doing in handling her husband's case. How is counsel supposed to know if she doesn't tell them? Because most lawyers don't think it's ethical to put words in their clients' mouths and say, isn't that true, that would help your case. No, but the client, the attorney has to ask their own client. There's two clients here, the husband and wife are both clients. He he Well, if you're an ethical lawyer, you ordinarily wouldn't put words in their mouth by saying, here are some things that could get you asylum if they're true, A, B, and C. Can you tell me that A, B, and C are true? Great. Usually you just ask them, well, what happened? Exactly. You ask them. The attorney never asked her. They asked him. The asylum office procedures, instructions to their own officers, sometimes spouses out of shame or other factors don't easily reveal, you know, threats or sexual violence, especially in the presence of their husband. And in fact, the asylum officers are trained, supposedly, they don't always do it, obviously, to ask, not in the presence of the other spouse, did anything else happen? That open-ended question is required. And it's required of the attorney when the attorney takes on a husband and wife as clients. The attorney can't rely on the husband's going to give all the answers and not ask. They don't have to prep in the way the court just described, but they have to ask the open-ended question. That's what happened when they came to our office. We don't really know, actually, what happened in the privacy of the attorney's office. We know from her declaration, I was never asked. That is part of the record. In our motion to reopen, we attach the declaration where she explained I was never asked. It wasn't until they came to us, into our office, and we asked her separately. I see. I don't recall right at the moment. I have a vague recollection that although she says that so, I have a vague recollection there was no Lozada compliance, so the lawyer didn't get a chance to say whether he asked her or why he didn't or what her response was. There was Lozada compliance here in the following way. The current counsel, which is myself, had a verbal conversation with prior counsel, which was reported in the Lozada filing in the motion to reopen, where he gave a verbal answer, saying I always thoroughly prepare my clients. And we wrote to him with the written statements that were sent to him, and we informed the board because there was a time issue. We were filing the motion, putting the prior attorney on written notice after the phone call, and that any response we got would be submitted. Six months went by before the board ruled, and we never got a response from the prior attorney. I'm not clear. Did you send the prior attorney, does the record show that you sent the prior attorney notice that the client said she had never been asked whether anything had happened to her? Yes. We did a, we sent a copy of the bar complaint and her statement to the prior attorney. Absolutely. He was on notice of that. Factually, what appears to have happened is he responded to the government only, not to us or to the board, and the government filed that response quite late, so the board didn't consider it. But he was definitely on notice. Yeah. So the board did deny in part a believing Lozada was not complied with because of the question of whether we should have waited to file the motion with the board to see if he was going to respond, which I think was also a wrong on the part of the board because Lozada doesn't say anything about, first of all, Lozada doesn't even require written notice. It requires notice. So there was notice because it's documented in the record that he was put on notice with the verbal phone call and he responded and that was given to the board. So that requirement under Lozada that prior counsel be informed and given a chance to respond was met. What the board didn't like was that the written response was filed to the, excuse me, the written notice was given to the prior counsel, and we then filed the motion to the board immediately rather than waiting three days or three weeks or three months to get to see if prior counsel was going to respond before telling, before notice, motioning the board to reopen. Of course, as we know, the motion to reopen to the board has to be done in a timely way. And at that point, it wasn't clear when the 90 days starts. Now, because of recent Ninth Circuit case law, it's much clearer. It's when the petitioner had actual notice of the vital information. I know you're giving the written notice soon enough so that he has a reasonable opportunity to respond before you file. Well, Lozada doesn't require the written notice. Lozada requires notice. So our position was we put prior counsel on notice by having the phone call, telling him if he does respond we'll send it in, telling the board that's what we've done and we will send it in if we get a response. The government has 13 days to file a reply. The board usually doesn't rule for several months. In this case, it took six months. There was ample time if he was going to do a written response to our written letter to notify the board of that. He never did it. Not before you filed your motion. No. But the problem is the motion, there would have been no value to waiting. Once you've filed your motion, there's no particular point in responding. Oh, there is. Because the rule says any response that Petitioner gets has to be forwarded to the board. And we told the board we'd do that. The prior counsel never responded to us beyond the phone call. He never responded in writing to us at all. So the record that the board ended up with is the identical record they would have had no matter when we sent the motion to the board. And you say he responded to the government, not to you? He prepared a declaration. He apparently sent that to the government because about five months after we filed the motion to reopen, the government filed their opposition and attached prior counsel's written statement. And what date did he prepare that declaration? It was dated May 30th, but they didn't file it until September. No explanation was provided for that delay, and it didn't comply with the board procedures, and so the board said we will not accept it late without an explanation. So the government sitting on this document. The government apparently sat on prior counsel's response. If the prior counsel had sent it to us, we would have had an obligation to send it in to the board, and we definitely would have done that. We told the board we would. We didn't know about it until the government filed it in September when the board found out about it, too. Did you have further contact with the prior attorney between the time of your initial notification and the time you see that declaration that the government files? None. The only contact was the phone call that we had before we filed, and then we wrote a letter and never heard from him in any manner. So a phone call and a letter, and then you just wait. We waited. Right. And if we had gotten something, we would have submitted it. Now, what the attorney's declaration that he did send to the government says is that he did advise the Chalmers that to advance their persecution claim, it was necessary for them to share with him every incident of harm they and their family, including extended family, ever suffered in Fiji. And he completed his declaration based on interviews of the Chalmers that they stated reflected the entire persecutory experiences of the Chalmers and their family. He provides various other material in the declaration to suggest that all these things are just subsequent fabrications. Well. So it looks like that's what you would have gotten if he'd sent it to you. If he had sent it to us, and we replied to that, to the board. So the petitioner's reply and further declarations are also included. It appears when the board made their decision, they did not consider either his response, because it was filed untimely, or our replies, since it addressed something they weren't considering. But to answer the issue, the record is so that there's a divergence in the record of what the conversations were. There is no doubt that prior counsel met with his clients. Our point is, and nothing contradicts it from his answer, he met with them together in the same room, and the facts here were. You're saying it's ineffective assistance for a lawyer to meet with his clients in the same room, that in order to avoid a bar grievance and a discipline proceeding, he has to meet with the wife separately. When you are asking about potential asylum case. So he doesn't control anything about any sex being involved. My answer would be yes. That would be a new rule that we would make up in this case, right? Actually, you're following what the asylum office themselves says. The asylum office procedures have that rule. So if it's. A rule for attorneys or a rule for themselves? For themselves. But it's different from a rule for attorneys. It should be stricter for the attorney. The asylum officer who's trying to determine the claim. So what would be a new rule for the attorneys? The rule, in my opinion, the rule for the attorneys should be at the minimum what it is for the asylum officers. Why don't we hear from the government? You're over, but we'll give you a minute. Thank you. Yeah. Good morning, Your Honors. May it please the Court, lease us mercy of the Office of Immigration Litigation for the respondent. Your Honors, this is a case that began in 2000 with the petitioners filing their asylum application and was followed by four years of proceedings before the agency, during which the petitioner's asylum application was denied by the asylum officer, the immigration judge, the board, and ultimately this Court. Nevertheless, in April 2007, more than two years after the board denied their original asylum claim in 2004, and significantly past the 90-day deadline on motions to reopen, the Sharmas filed an untimely motion to reopen with the board requesting equitable tolling of this deadline based on a claim of ineffective assistance of counsel in the proceedings before the agency. To qualify for equitable tolling on account of ineffective assistance of counsel, a petitioner must demonstrate that he or she was prevented from timely filing their motion due to prior counsel's ineffectiveness, that he or she demonstrated due diligence in discovering counsel's fraud or error, and that he or she complied with the procedural requirements of the matter of LOSADA. Here, the board did not abuse its discretion in denying the petitioner's motion to reopen as untimely, where the petitioners neither showed due diligence in pursuing their claim of ineffective assistance of counsel, nor did they comply with the requirements of matter of LOSADA. As an initial matter to take that last point first, what did they do in your view to comply with LOSADA, and why was that not sufficient? The petitioners here allege that they specifically the procedural ground of matter of LOSADA issue is the, to quote LOSADA, that before allegations of ineffective assistance of former counsel are presented to the board, emphasizing the word before, former counsel must be informed of the allegations and allowed the opportunity to respond. Any subsequent response from counsel or report of counsel's failure or refusal to respond should be submitted with the motion. Here, counsel states that... Submitted with the motion? With the motion. That is the exact language of LOSADA. If the motion is made, that's the extent of the operation of that rule that you've just given me. There's nothing in that rule that says what must be submitted after the motion is made. No. Okay.  That's the exact language of LOSADA. They don't have a right or a duty to submit counsel's response after the filing of the motion? Certainly, if they receive it, they could, but it's not the requirement of LOSADA is that they compile these documents beforehand. And what about the form of the notice? I can think of anything from a written notice that tells precisely what the accusation is down to mentioning to somebody when you pass them in the hall on the way to the men's room. Well, to again state... What kind of notice is good enough? The language of LOSADA says that the allegations of ineffective assistance of former counsel must be presented to the counsel being accused. Therefore, the most efficient... It doesn't say in writing or orally? It does not indicate it. But to make a complete allegations and to indicate in detail the allegations, written notice would most likely be the most efficient way of detailing the exact allegations against counsel. And are you contending that insufficient notice was provided? Well, counsel states that they contacted former counsel, both Ms. Kaufman, and they say that they called Mr. Seacombe, but they give no evidence as to what was said in these conversations or to what extent the allegations against them were stated. I mean, looking at the attorney's declaration, it simply says on April 17, 2007... What page are you reading from? Oh, I'm sorry. It's 256 of the record. Looking at the attorney's declaration, it says on April 17, 2007, I spoke with Mr. Seacombe and informed him that I was filing a complaint with the State Bar as well as a motion to reopen for ineffective assistance of counsel. It doesn't state in any detail as to whether or not there were any allegations, what allegations of ineffective assistance of counsel were stated. It doesn't even claim the declaration that he told him what the allegations were? No. No. It simply states that Mr. Seacombe responded very generically that he indicated to me that his practice in general was to be thorough in his preparation of clients. I mean, it doesn't state specifically, as we later discovered in Mr. Seacombe's response, which detailed how he responded to the exact allegations that were made against him. Now, I may not have it in the papers here in front of me. Mr. Nightingale says in this same paragraph, I sent a letter to Mr. Seacombe. A copy of that letter is attached to the motion to reopen. What does the letter say? Well, again, Your Honors, the issue here is the issue of notice. What's the letter say? The letter details is states in more detail the allegations. What page? I'm sorry, Your Honors. Let me just make sure I have the right page. Page 267 through 270 of the record. This is almost a three-page letter of allegations of ineffective assistance of counsel. I don't have it right here in front of me. You're going to have to be pretty creative if you fill three pages and don't give any details of what the charge is. I'm sorry. So did he tell him in this long letter? I don't have it in front of me either. Did he tell him one of the things we're accusing you of is not asking the wife whether there was any sexual offense against her and not talking to her in private and not presenting it? He does state that he does accuse Mr. Seekon of stating that he never asked Mr. Sharma if she'd experienced persecution in Fiji, and he also, I believe that was the allegation. It doesn't necessarily mention, just scanning it really quickly here, even though it does make the exact allegation that he did not speak to Mr. Sharma. However, I'm not sure if it says specifically discussing her allegation of rape in Fiji. Incidentally, what happens when there's proper, let's hypothesize proper Lozada compliance, accusation you didn't talk to the wife, response such as the one that the first lawyer provided here, not only did I talk to her, when I tried to talk to her husband, she did all the talking. She dominated the conversation. She told everything and made him tell more. That's basically what the lawyer says happened when he talked to the clients. What do you do then? I'm sorry. Who decides? Does the BIA or the IJ then review the two declarations, decide what they believe? Well, Your Honor, just to set up the process, I guess I would say, in which this court has held in other cases, the question before the court today is the question of equitable tolling and thus whether or not the petitioner has complied with a matter of Lozada. If the board decides that the requirements of equitable tolling has been decided, they will look at the merits of the claim of ineffective assistance of counsel. And, yes, at that point, they would look at both the allegation that has been made by the petitioner, the allegations that have been made by the petitioner, and the response of counsel and decide whether or not there has been ineffective assistance of counsel. See, we don't get to that until we decide that they have a duty to look at the merits of it. Yes. Okay. That's essentially the requirement of matter of Lozada and why it is so important in this case. This is not a case where it is clear on the face of the record. This is not the ñ these are not one of those cases where you can say that there's substantial compliance. This is a case where there are ñ there is a question whether or not there's ineffective assistance of counsel. And because of that, the requirements of matter of Lozada have to be ñ have to be complied with. This Court has said that the matters ñ the requirements of matter of Lozada are not sacrosanct. But at the same time, they have acknowledged in cases like Reyes that this ñ that the requirements of matter of Lozada are important because we need to resolve the question of whether or not there's ineffective assistance of counsel. So for a moment, the Lozada was complied with. Then what? Well, at that point, the board would have to look at whether ñ well, I mean ñ I'm sorry. In this particular case, there is another ground for denying the question of equitable tooling, for denying the motion to reopen is untimely, and that is the question of due diligence. And the government's position here is that the Petitioners did not show due diligence in pursuing their claim. The Petitioners here filed their motion to reopen almost two years after the board's final decision in this case. So the board's decision was in 2004, and the Sharmas did not file their motion to reopen until 2007. And when were they aware ñ assuming that we have ineffective assistance of counsel. I mean, I understand that's an assumption. I understand it's disputed as to what actually went on with them and their prior counsel. Yes. But when, in your view, were the Sharmas aware of the ineffectiveness of the counsel? Not when their lawyers might have been, but when they were aware. Your Honors, that's actually a little bit of a confusing question in this particular case because the Petitioners allege ineffective assistance of counsel against several counsel. If you're talking about ñ but I would ñ the government's position would be that the question here is the preparation of the asylum application. That is what they're alleging the ineffective assistance of counsel associated with. Therefore, looking at cases like Avignon, that question would have been resolved in terms of the Petitioners would have been on notice that there had been possibly ineffective assistance of counsel at the point that the board denied their asylum application in 2004. Especially in this case, which, as Your Honors previously pointed out, the cards were all in the Petitioner's hands here. The Petitioner ñ the allegations of ineffective assistance of counsel are based on the Petitioner's ñ on the Petitioner's knowledge here, that the Petitioners are alleging that Mrs. Sharma is alleging you never spoke to me in my asylum application. I'm sorry. Oh, excuse me. Thank you. Thank you very much. Mr. Nightingale, would you like one minute? On the issue of the C.A.R., page 269, it very clearly says in our letter that was received by prior counsel, first, your office did not investigate whether Ms. Sharma had her own claims to asylum or even informed them she could have her own application, which constitutes ineffective assistance because it meant she never received the opportunity to present her claim in immigration court. So it's quite clear that the prior counsel was notified. That's not in writing of the very details in that three-page letter. The court ñ the Third Circuit in the Ronci case found that verbal notification of prior counsel without even any written follow-up was sufficient to meet the Lozada requirements. Assume that we go so far as to agree that you satisfied Lozada. Why are you entitled to sufficient tolling? Because the motion clearly was made late if you don't have tolling. Because we did an I.C. claim not only on trial counsel but on appellate counsel for not raising it against trial counsel because she, Ms. Hoffman, represented them in front of the BIA and then to the Ninth Circuit. They continually had representation. Ms. Avignon, the Ninth Circuit precedent on this, she stopped at the BIA and never filed a Ninth Circuit case and doesn't clear that she had any other attorney representation for ten months. Here, the Petitioners stayed with their attorney, pursued their appeal, had no reason to think that going to the Ninth Circuit wouldn't fix the problem at the board, and so they reasonably relied on the attorney telling them what is the best thing to do. So we did an I.C. against that attorney for not raising the I.C. against a prior attorney in time. So we think that carries her through. She was represented by attorneys all along until she came to us. So they acted diligently in that respect. Thank you very much. Thank you. I thank both counsel for arguments. Scharmer v. Holder is now submitted for decision.
judges: Hug, Kleinfeld, Fletcher